# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00995-SCT

*MARGARET LYNN OWEN*

*v.*

*KENNETH WHITESIDE OWEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2002 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | UNION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAK McGEE SMITH |
| ATTORNEY FOR APPELLEE: | J. MARK SHELTON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 04/27/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND DICKINSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Margaret Lynn Owen (Margaret) and Kenneth Whiteside Owen (Kenneth) filed a joint complaint for divorce in the Chancery Court of Union County, Mississippi, on the grounds of irreconcilable differences. The parties submitted the property settlement issues to the chancellor. The Honorable John C. Ross, Jr., Chancellor, granted the divorce on irreconcilable differences and ordered the marital assets to be sold with Kenneth receiving 60% of the proceeds and Margaret 40%.

¶2.     In reaching his decision in ***Owen v. Owen,*** 798 So. 2d 394, 397 (Miss. 2001) (***Owen I***), the chancellor noted the parties' ages, present incomes, and that Kenneth had substantially contributed to Margaret obtaining her college degree.  The chancellor also noted in ***Owen I*** that Margaret had worked only sporadically during the marriage.  The chancellor stated that, after having reviewed the ***Ferguson*** factors, "*as a matter of fact that Kenneth . . . [had] been the primary financial contributor to the assets of the marriage and that he should receive a greater percentage of any distribution of the marital assets*."  ***Id.*** (emphasis added).

¶3.     In ***Owen I***, the chancellor found that the couple's two homes and six vehicles were marital property and ordered them sold.  ***Id***.  Kenneth received 60% of the proceeds, and Margaret received 40%.  The chancellor also determined that the couple's investment account was marital property and awarded Margaret 40%.  Both parties also received a specific list of personal property items which the chancellor found to be separate assets.  According to Kenneth's estimates, Margaret received $38,250 in separate personal property while Kenneth received $8,510. All personal property not specifically separated was deemed marital property and was ordered to be sold with Kenneth receiving 60% of the proceeds and Margaret 40%.

¶4.     The chancellor, however, did not specifically address the applicable ***Ferguson*** factors.  Margaret appealed the decision to this Court.  In an opinion written by then Justice James W. Smith, Jr., this Court found that "the chancellor erred in failing to ***specifically*** address all applicable ***Ferguson*** factors . . . ."  ***Owen I,*** 798 So. 2d at 396 (emphasis added).  The Court

2

reversed the chancellor's judgment and remanded the case to the chancery court to provide a record of its findings of fact and conclusions of law concerning each of the applicable *Ferguson* factors. *Id.* at 401.

¶5.     On remand, the chancellor informed the parties that he did not intend to occupy any further court time with this case and requested the parties to submit briefs on their arguments. In Judge Ross's letter dated March 20, 2001, to the attorneys, he stated that he had received and reviewed the remand from this Court. In his letter, Judge Ross specifically stated, "I do want you to set forth in letter-brief *any matter you believe needs to be considered in complying with the remand order*." (Emphasis added). Judge Ross requested that the parties comply by April 15, 2001, unless the parties informed him "this time schedule is [was] inconvenient . . . ." The record in this case does not indicate that either party objected to Judge Ross's request or time schedule. According to the record furnished to this Court on appeal, *neither* attorney made any request for a new hearing before Judge Ross issued his new opinion.

¶6.     The chancellor subsequently issued a supplemental opinion and judgment. The supplemental opinion contained a six-page analysis of the applicable *Ferguson* factors. The chancellor determined that "after a full and extensive consideration . . . [of] the factors applicable in *Ferguson v. Ferguson, supra,* . . . that the division of property in the opinion and judgment of this Court dated March 12, 1999, shall remain unchanged." That is, the 60/40 percentage of division and distribution of the marital property remained unchanged.

3

On remand, the chancellor failed to address the statement the chancellor erroneously made in **Owen I** that Kenneth was entitled to receive a greater percentage, 60%, of any distribution of the marital assets than Margaret, 40%, based on his being the primary financial contributor.

¶7.     At a subsequent hearing while the case was remanded, the chancellor heard Kenneth's motion for contempt filed against Margaret. The chancery court did not find Margaret in contempt of court, but the chancellor ordered a $5,000 judgment for the items that were not delivered by Margaret to the public sale to offset Margaret's 40% share of the marital property.

¶8.     Margaret now appeals to this Court contending the chancellor did not comply with the opinion of this Court in **Owen I** on remand. Margaret also appeals the $5,000 judgment to offset the judgment owed by Kenneth to Margaret for her 40% of the marital property.

**FACTS**

¶9.     In **Owens I,** we stated the following pertinent facts:

> Margaret and Kenneth married in 1987. The couple initially lived in Texas where Kenneth worked and Margaret attended college. While a full-time student, Margaret performed the household chores and held several part-time jobs, using her earnings to pay for school supplies, clothing, and groceries. Margaret's tuition was paid by both Margaret's father and Kenneth.

> In 1992, the couple returned to New Albany, Mississippi. Margaret initially taught school and worked at a local clothing store. Later, Margaret started her own business as an artist. Margaret gave Kenneth all income she earned, and, in return, he wrote her checks for the amount transferred to him. In essence, Margaret kept whatever she earned, and these "transfers" were made apparently for tax purposes only. Meanwhile, Kenneth began working

4

as an engineer for Master-Built . . . . Kenneth's ESOP and 401(k) plan were valued in excess of $5,000 and $7,000, respectively, as of the date of divorce.

During the marriage, the couple purchased two homes. Margaret and Kenneth took title to the first home jointly, and both helped make extensive repairs on the home. The second home, in which Kenneth took sole title, was used as a rental house. Both parties participated in cleaning the second home and landscaping the yard, but Kenneth testified that he paid Margaret for the work she performed. All mortgage payments, taxes, and repair payments on both houses were made by Kenneth.

The couple also owned an investment account which contained a pre-divorce balance of $14,844 . . . .

At the time of divorce, Margaret earned $1,250 in net monthly income and spent $2,766 in monthly living expenses, while Kenneth earned $3,107 in net monthly income and spent $2,651 in monthly living expenses.

The couple filed for divorce in 1998.

***Owen I,*** 798 So. 2d at 396-397.

## DISCUSSION

¶10.    This Court employs a limited standard of review of property division and distribution in divorce cases. ***Reddell v. Reddell,*** 696 So. 2d 287, 288 (Miss. 1997). This Court has repeatedly stated that the chancellor's division and distribution will be upheld if it is supported by substantial credible evidence. ***Carrow v. Carrow***, 642 So. 2d 901, 904 (Miss. 1994); *see* ***Owen I***, 798 So. 2d at 397-98. The "chancery court has authority, where equity demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties." ***Savelle v. Savelle***, 650 So. 2d 476, 479 (Miss. 1995) (citing ***Hemsley v. Hemsley***, 639 So. 2d 909, 914 (Miss. 1994)). "This Court will not substitute its judgment

5

for that of the chancellor '[e]ven if this Court disagree[s] with the lower court on the finding of fact and might [arrive] at a different conclusion.'" ***Owen I***, 798 So. 2d at 397-98 (quoting ***Richardson v. Riley***, 355 So. 2d 667, 668 (Miss. 1978).

¶11. In ***Carrow***, 642 So. 2d at 904, citing ***Bell v. Parker,*** 563 So. 2d 594, 596-97 (Miss. 1990), this Court stated that the chancellor's findings will be upheld unless those findings are clearly erroneous or an erroneous legal standard was applied. However, the Court will not hesitate to reverse if it finds the chancellor's decision is manifestly wrong, or that the court applied an erroneous legal standard. *See* ***Sandlin v. Sandlin***, 699 So. 2d 1198, 1203 (Miss. 1997); *see also* ***Carrow***, 642 So. 2d at 904; ***Bell,*** 563 So. 2d at 596-97.

**I.     *Ferguson* Factors**

¶12. Marital property includes "any and all property acquired or accumulated during the marriage." ***Hemsley***, 639 So. 2d at 915. The parties' property must be classified as a marital or non-marital asset in order for the chancellor to make an equitable division and distribution of the marital estate. ***Lauro v. Lauro***, 847 So. 2d 843, 847 (Miss. 2003). In ***Ferguson v. Ferguson***, 639 So. 2d 921, 928 (Miss. 1994), this Court stated , "[t]he chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." "This division does not require an automatic fifty-fifty split or a vested right. . . ." ***Savelle***, 650 So. 2d at 479.

¶13. The Court in ***Ferguson*** established the factors that should be considered in reaching a decision on the equitable distribution of marital property. ***Ferguson***, 639 So. 2d at 928.

6

The Court recognized the need for guidelines to aid chancellors in their adjudication of marital property division. *Id*. The Court directed the chancery courts to evaluate the division of marital assets by the following guidelines, where applicable, to effect an equitable division of marital property and to support their decisions with findings of fact and conclusions of law for purposes of appellate review. *Id*. The Court stated that chancery courts should consider the following guidelines, where applicable, regarding determination of the equitable division of marital property:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

   a. Direct or indirect economic contribution to the acquisition of the property;
   b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
   c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or intervivos gift or to an individual spouse;

7

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Id.* at 928.

¶14. On remand, the chancellor devoted six pages of the supplemental opinion and judgment listing the *Ferguson* factors and findings of fact regarding the applicable factors. Because this case was remanded in *Owen I* for the chancellor to specifically address all applicable *Ferguson* factors, it is imperative that the Court examine the chancery court's findings of fact as to each of the applicable factors. The chancellor stated:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

    a. Direct or indirect economic contribution to the acquisition of the property;

        Kenneth Whiteside Owen contributed substantially to the financial acquisition of assets during their marriage. Margaret Lynn Owen earned a much lesser amount per year, therefore could not contribute as much to the acquisition of assets.

    b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage;

8

The parties where married for 11 years, and during this time Margaret performed the household duties and held several part-time jobs while being a full-time student, and later owned her own business. Kenneth Whiteside Owen was employed continually throughout the marriage. Both contributed to the marital relationship as evidenced by time spent on activities renovating the marital home. The parties acquired two homes and both parties helped make extensive repairs on one home and cleaned/landscaped the rental property.

     c.     Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

Kenneth Whiteside Owen contributed substantially to Margaret Lynn Owen obtaining a college education with a degree in art history and French.

2.     The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement decree or otherwise;

After the parties separated, Kenneth Whiteside Owen withdrew money from an investment account which contained a pre-divorce balance of $14,844. Margaret Lynn Owen cashed a check from an insurance settlement in the amount of $830.00.

These sums will be discussed below.

3.     The market value and the emotional value of the assets subject to distribution;

The parties owned two homes and several vehicles. The only item that had an appraisal at the time of the hearing was the marital home. Several items of personal property were valued by the parties themselves. Many items of property were gifts from Margaret Lynn Owen's grandmother.

Kenneth Whiteside Owen has retirement benefits in the form of an ESOP and a 401(k) plan with values of $5,368.00 and $6,910.00, respectively, as of the date of divorce.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or intervivos gift or to an individual spouse;

Margaret Lynn Owen was given several pieces of personal property that were not to be included as marital assets. These items are:

English walnut silverware chest
Cherry table and chairs
2 Walnut Cellerettes
Walnut beveled glass mirror
Oak letter box
2 Highback oak chairs
Walnut wardrobe
Marble top walnut table
Mahogany tea box
3 Cork display stands
Hardwood easel
Mahogany chest of drawers
Walnut clothes rack
Walnut night stand
Walnut 4 poster bed with canopy
Mahogany chest of drawers with removable top
Mahogany sleigh bed
Oak drop leaf table
12 piece setter of Buttercup Sterling with serving pieces
Margaret's personal jewelry
Paint brushes, paint, art supplies
Miscellaneous boxes, wooden, marble
Miscellaneous pictures/painting/prints - approximately 35 pieces
Glassware, vases, pottery

Likewise, Kenneth Whiteside Owen was given certain items of personal property that he acquired before the marriage or were his personal effects. These are as listed below:

Kitchen pub chairs
Walnut bookcase with glass doors
Ottoman

10

Benchcraft sofa and chair
Willow sofa ad chair with cushions
Two (2) white bookcases
Two (2) two drawer filing cabinets
Stereo, CD player
CD's - approximately 200
VCR
8mm video camera
Kenny's personal jewelry
Vacuum cleaner
Lawn mower
Edger
Kenny's tools
Air compressor, hoes, etc.
Welder
Two (2) AR -15 rifles
Two (2) Browning pistols
Ruger Pistol
Tec-22 pistol
Walther PPK pistol
Reloading equipment, press, dies, components
Oaks Country Club Membership

5.  Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

There are no contractual or legal consequences to third parties in the distribution of the marital assets to the parties.  No proof was offered as to any potential tax consequence problems for either party.

6.  The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

To avoid potential sources of future friction between the parties, this Court ordered that the marital home, rental property and vehicles be sold and their proceeds divided between the parties.

7.  The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and

11

At the time of the divorce, Kenneth Whiteside Owen had stable employment as an engineering manager at Master-Built Products, New Albany, Mississippi with a net monthly income of $3,107.00; Margaret Lynn Owen owned a business, earning approximately $1,250.00 per month.

Margaret Lynn Owen has a college degree and income potential much greater than her current source of income. She will receive a substantial sum of money when the marital property is sold and the proceeds divided.

8. Any other factor which in equity should be considered.

[N]one.

¶15. The chancellor then addressed how the marital property and the proceeds from the public auction should be divided:

With respect to the motor vehicles, the Court finds the proof that the 1998 Mazda pickup truck had a negative value due to the indebtedness due thereon. Kenneth Whiteside Owen is hereby given use, possession and ownership of this automobile and will be required to make all of the payments due thereon.

With respect to the other vehicles, including the motorcycle, the Court has previously required that these items of personal property be sold, with Kenneth Whiteside Owen receiving sixty percent (60%) of the net proceeds and Margaret Lynn Owen receiving forty percent (40%) of the net proceeds.

Likewise, any and all other items of personal property, including furniture, were sold at public auction and the proceeds divided, with Kenneth [sic] Whiteside Owen receiving sixty percent (60%) of the net proceeds and Margaret Lynn Owen receiving forty percent (40%) of the net proceeds.

The parties received a check in the amount of $830.00 as an insurance settlement. This check was cashed by Margaret Lynn Owen. Kenneth Whiteside Owen is entitled to one-half of this check or $415.00.

At the time of the separation, Kenneth Whiteside Owen had in his name an investment account with a balance of $14,844.00. Margaret Lynn Owen should be and is hereby entitled to forty percent (40%) of this or $5,937.60.

The Court finds that Margaret Lynn Owen should be and is hereby awarded 40% of the total amount of both Kenneth Whiteside Owen's 401 (k) plan, of $6,910.00, and ESOP, of $5,368.00, which is $2,764.00 and $2,147.20 respectively, or $4,911.20.

¶16.    That the chancellor did not order a 50/50 division of the marital property does not require this Court to reverse. *See **Chamblee v. Chamblee***, 637 So. 2d 850, 864 (Miss. 1994) ("Mississippi is not a community property state. . . ."). "Divorcing parties also have **no right to equal distribution** *even where the parties jointly accumulated* **the property**." ***Owen I***, 798 So. 2d at 399 (emphasis added). "[E]quitable distribution of marital property begins with the assumption that the contribution of the spouses is equal, whether that contribution is made in the workforce or at home." ***Craft v. Craft***, 825 So. 2d 605, 614 (Miss. 2002). Starting from the assumption that the contributions are equal, "the chancellor can adjust the award in the favor of one of the spouses, after making findings of fact and conclusions of law, if the application of the ***Ferguson*** factors so warrants doing so." ***Id***. While spouses have no right to 'equal' distribution, spouses are not prohibited from receiving a portion of marital assets acquired solely by the other spouse's financial contributions where the non-cash contributing spouse has made alternative contributions to the marriage. *See* ***Hemsley,*** 639 So. 2d at 915.

¶17.    This Court has declined to interpret "equitable" distribution to mean "equal" distribution. ***Trovato v. Trovato,*** 649 So. 2d 815, 818 (Miss. 1995); *see also* ***Chamblee,*** 637

13

So. 2d at 863-64. There exists no right to "equal" distribution of the marital property. *See Pierce v. Pierce,* 648 So. 2d 523, 526 (Miss. 1994).

¶18.  This Court in *Owen I*, reversed the chancellor for his deficiency in applying the applicable *Ferguson* factors and ordered the chancellor to consider the applicable factors in his new analysis of the division of the marital assets. The chancellor requested that the parties submit briefs on remand to set forth any matter which needed to be considered in complying with the remand order of this Court. The chancellor provided a statement of the *Ferguson* factors and factual findings as to the applicable factors on remand. However, the 60/40 division of the marital property remained unchanged.

¶19.  In *Owen I*, we found that "the chancellor committed reversible error in basing the division of marital assets upon one factor financial contributions [Kenneth's economic contributions to the marriage] to the accumulation of marital property rather than upon all eight *Ferguson* factors." *Owen I*,  798 So. 2d at 398.

¶20.  The chancellor stated that Margaret earned a much lesser amount per year, therefore, she could not financially contribute as much to the acquisition of assets as Kenneth. The chancellor found that the parties where married for eleven years, and during this time, Margaret performed the household duties and held several part-time jobs while being a full-time student. Margaret obtained a college degree during the marriage that Kenneth helped to financially support her to secure. Margaret later owned her own business. Kenneth was employed continually throughout the marriage. Kenneth earned $3,107 per month from his

14

employment as an engineering manager. Margaret earned $1,250 per month from operating her own business. The chancellor found that Margaret's college degree provided her income potential much greater than her current source of income.

¶21. The chancellor stated that both contributed to the marital relationship as evidenced by time spent on activities renovating the marital home. The parties acquired two homes, one being rental property. The chancellor found that both parties helped make repairs on one home and cleaned/landscaped the rental property. While the non-financial contributions were stated by the chancellor in the *Ferguson* analysis, the record does not reflect the chancellor assigned any specific value to Margaret's or Kenneth's non-financial contributions. Likewise, the chancellor does not provide any stated conclusion of law to explain maintaining the 60/40 division on remand.

¶22. On remand, the chancellor properly separated the marital property from the non-marital property. The chancellor stated Kenneth's financial contribution and earning capacity. The chancellor stated Margaret's earning capacity. The chancellor also stated Margaret's and Kenneth's non-financial contribution to the accumulation of the marital assets, such as housework and repairs, without assigning any monetary value to the non-financial contributions. Besides the 60/40 division of the several automobiles and the two homes, other major marital assets which were specifically addressed and divided on a 60/40 basis by the chancellor in the supplemental opinion were: (1) the parties's investment account

in Kenneth's name with a balance of $14,844.00 and (2) Kenneth's retirement accounts: a 401 (k) plan, of $6,910.00, and a ESOP, of $5,368.00.

¶23.    In *Owen I*, this Court found the chancellor improperly focused on Kenneth's financial contributions rather than focusing on all the applicable *Ferguson* factors. Besides stating the *Ferguson* factors and a factual finding as to each factor as stated above, the chancellor does not state how he arrived at the 60/40 division of the marital property. The facts stated under the *Ferguson* factors were substantially the same facts that this Court had before it in *Owen I* which the Court specifically found improperly focused on Kenneth's financial contribution. *Owen I*, 798 So. 2d at 396-97. The facts from *Owen I* are restated in this opinion in the facts section for comparison and review. The chancellor's judgment regarding the division and distribution of the marital property remained unchanged on remand. The fact that the division remains unchanged on remand and the chancellor failed to provide a conclusion of law to support the 60/40 division on remand is particularly troubling. In *Owen I*, the same chancellor stated substantially the same findings of fact as stated under the applicable *Ferguson* factors and then concluded that Kenneth was entitled to a greater percentage of the marital assets, 60%, than Margaret, 40%, because Kenneth was the primary financial contributor to the accumulation of the assets.

¶24.    The record reflects that on remand the chancellor still focused primarily on Kenneth's financial contribution in dividing the marital property with Kenneth receiving 60% of the marital property and Margaret receiving 40% as this Court found in *Owen I*. *See Owen I*,

16

798 So. 2d at 398-99. Margaret's monthly income, $1,250, is approximately 40% of Kenneth's monthly income, $3,107. In *Owen I*, this Court held, "the chancellor's division of property did improperly focus only on Kenneth's economic contributions to the marriage." *Id*.

¶25. Besides just stating findings of fact for each applicable factor, the chancellor failed to provide any conclusion of law for our review on appeal. In *Ferguson*, this Court held that chancellors are required to consider the applicable factors and support their decisions with findings of fact and conclusions of law for appellate review." *Ferguson*, 639 So. 2d at 928.

¶26. As such, we find the chancellor addressed each of the *Ferguson* factors on remand in rendering his decision as to the division and distribution of the marital property as instructed by this Court in *Owen I*. However, despite the *Ferguson* factors being listed and the findings of fact stated as to the applicable factors, we find the chancellor failed to provide any conclusion of law on remand for our appellate review to explain leaving the 60/40 division from *Owen I* unchanged. Therefore, the judgment of the chancellor is reversed and the case remanded to the chancery court to provide an equitable distribution consistent with this opinion.

## II. Motion for Contempt

¶27. Subsequent to the divorce and original distribution of assets, Kenneth filed a motion for contempt alleging that Margaret had failed to deliver certain items for sale at the public

17

auction and that she had damaged the 1966 Jaguar XKE while it was in her possession.[1]  A

hearing was held on Kenneth's motion for contempt, and the chancellor rendered his findings

in the supplemental opinion and judgment after addressing the ***Ferguson*** factors discussed

in Issue I.  Margaret was not found to be in contempt, but Kenneth received a judgement in

the amount of $5,000 to offset the items that Margaret failed to produce for public sale.

Because the judgment also appears to be incomplete as to how the chancellor arrived at the

amount of $5,000, we reverse the chancellor's judgment and remand the case for the

chancellor to provide a more detailed analysis consistent with this opinion.

**1981 Mercedes 300TD**

¶28.    The chancellor found that Margaret sold the Mercedes and failed to give Kenneth his

share of the proceeds.  The Mercedes sold for $800.  The chancellor stated that Margaret

failed to pay Kenneth $800 from the proceeds of the Mercedes ordered to be sold.  It appears

that the chancellor used this $800 figure in arriving at the judgment in the amount of $5,000

---

[1]  Margaret's brief additionally discusses a filing cabinet; the keys, books, manuals spare parts and photo album of restoration of the Jaguar; Kenneth's tools; and Kenneth's compact discs (CDs).  Kenneth's brief does not contain any discussion of these items.  It appears from reviewing the order authorizing public auction and its exhibit "A" that Margaret correctly notes that these items were not ordered to be produced for sale at the auction.  However, these items were ordered to be Kenneth's separate personal property.  In the chancellor's opinion discussing Margaret's failure to produce these items, it is not clear from the record that these items factored into the chancellor's judgment against Margaret in the amount of $5,000.  In fact, the chancellor specifically states that the judgment was for the items that were not produced for public sale, not items that were not produced to Kenneth.  Therefore, we find the chancellor on remand shall clarify the judgment as to these specific items.

to Kenneth to be used to offset the amount owed to Margaret. As such, the chancellor erred in the determination of the value assigned. Margaret was entitled to receive 40% of the proceeds of the sale. Therefore, Kenneth was entitled to receive 60%, or $480, not 100% of the $800. We find this should be remanded for the chancellor to readdress the Mercedes in order to examine how the chancery court arrived at the judgment in the amount of $5,000.

**Camera Equipment**

¶29. The chancellor found that Margaret failed to deliver "certain camera equipment for the public sale." The chancellor assigned a value of $830 to the equipment. It appears the chancellor factored this value into the assessment of the $5,000 judgment. The chancellor's opinion does not specifically state what camera equipment was considered. The chancellor's prior order of what items were authorized to be produced and sold at the public auction provided that Margaret would produce 35 mm cameras and lens valued at $125 and a Minolta 35 mm valued at $350. Margaret contends that two cameras were sold, one being a Nikon camera and another camera. Margaret also contends that the Minolta camera had been lost prior to the divorce, and therefore, it was impossible for her to produce.[2] Regardless, Margaret argues that the Minolta camera was assigned a value of $350, not $830. On

---

[2] In Margaret's motion to correct order, she informed the chancery court that the Minolta camera had been lost on Mount Conti prior to the divorce. However, a review of the clerk's index of the record provided and the subsequent order to confirm sale, it does not appear the chancellor specifically addressed the motion to correct as to the Minolta camera.

remand, the chancellor shall readdress the camera equipment in order to examine how the chancery court arrived at the judgment in the amount of $5,000.

**1966 Jaguar XKE**

¶30.    In the chancellor's supplemental opinion and judgment, the chancellor found that the Jaguar had been damaged while in Margaret's possession.  Margaret contends that the chancellor erred in finding that she had damaged the Jaguar while it was in her possession.  Margaret testified she had no knowledge of any damage; did not damage the Jaguar; and could not see any damages in the photographs she reviewed at trial.

¶31.    Kenneth testified that the photographs depicted the condition of the Jaguar after he received it from Margaret.  Kenneth testified and submitted an estimate for repairs that totaled $3,173.24.  The estimate from Parks Chevrolet Company, Inc., was introduced as exhibit 16.  The Jaguar was in Margaret's possession until the sale.  Kenneth purchased the Jaguar at the sale.

¶32.    Margaret contends the chancellor erroneously factored this into his decision to award Kenneth $5,000 to offset his obligation to her.  However, the chancellor's supplemental opinion and judgment does not specifically assess any value to the damage to the Jaguar.  The chancellor's supplemental opinion and judgment also does not state that Margaret did not deliver the Jaguar for the public sale. The supplemental opinion only provided that the Jaguar "had been damaged while in her [Margaret's] possession."  However, the chancellor's supplemental opinion stated that Margaret was responsible for "*a judgment of the amount of*

20

*$5,000.00 to offset the items Margaret Lynn Owen failed to deliver for the public sale.*"

(Emphasis added). Without a detailed analysis of how the chancellor computed the $5,000 amount and based on the language provided in the chancellor's supplemental opinion, this Court is unable to adequately address this issue. Therefore, the chancellor shall on remand address how, or if, the Jaguar factored into the judgment in the amount of $5,000 to offset for items that Margaret failed to produced for the public sale.

¶33.  Margaret also argues that the chancellor erroneously allowed Kenneth to introduce the estimate from Parks Chevrolet without an expert. However, Margaret provides no authority to support her position. Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment of error. *Williams v. State*, 708 So. 2d 1358, 1360 (Miss. 1998). Mississippi Rule of Appellate Procedure 28(a)(1)(6) requires that the argument in an appellant's brief must contain "the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied upon." *See United Plumbing & Heating Co. v. Mosley*, 835 So. 2d 88, 92 (Miss. App. 2002). Therefore, due to Margaret's complete failure to cite authority in her brief, the Court does not have to address her assignment of error regarding the introduction of the estimate.

¶34.  However, this assignment of error will be briefly addressed in order to provide guidance to the chancellor on remand. It is a well-settled and pronounced legal principle that when cost of repairs are relied upon as a measure of damages it is necessary to establish that

21

(1) the repairs were necessary as a result of the wrongful act, and (2) the cost of repairs were necessary or reasonable. ***Bryan Bros. Packing Co. v. Grubbs***, 251 Miss. 52, 168 So. 2d 289, 293 (1964) (citing ***National Fire Ins. Co. of Hartford v. Slayden***, 227 Miss. 285, 85 So. 2d 916 (1956); *see* ***Sims v. Collins***, 762 So. 2d 785, 790 (Miss. App. 2000). In ***Bryan***, this Court held that it was error for the trial court to admit the testimony of a non-expert as to the amount of damages done to the vehicle as a result of the accident over the defendant's objection. ***Bryan***, 168 So. 2d at 293. Here, Kenneth testified to the cost of repairs, and the repair estimate was introduced through him. Margaret's counsel objected to the introduction of the repair estimate. The chancellor overruled the objection and allowed the estimate to be introduced. We find the chancellor erred in allowing the estimate to be introduced without an expert.

¶35. Furthermore, Margaret contends, based on her testimony, that the chancellor could not have determined that the Jaguar had been damaged while in her possession. Margaret testified that to her knowledge there was no damage done to the Jaguar. She also testified that she could not see any damage in the photographs. As such, Margaret argues that there was no evidence that the damages occurred while in her possession. Kenneth correctly argues that the chancellor was well within his discretion as the trier of facts to believe his testimony over Margaret's testimony. This Court has repeatedly held that the chancellor's findings of fact are required to be respected if supported by credible evidence and not manifestly wrong. *See* ***Bryan***, 589 So. 2d at 659; ***In re Taylor,*** 609 So. 2d at 393. Likewise,

22

it is a well-established proposition that "[i]t was the chancellor's duty to evaluate the credibility of the witnesses." **Simmons v. Jaggers**, 914 So. 2d 693, 697 (Miss. 2005); *see* **In re Estate of Carter**, 912 So. 2d 138, 143 (Miss. 2005) ("Our standard of review is indeed deferential, as we recognize that a chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility.").

¶36.    However, for the reasons stated herein, the case is remanded to the chancery court in order to provide a detailed analysis, consistent with this opinion, of what, if any, role the Jaguar played in the determination of the $5,000 judgment.

## CONCLUSION

¶37.    We find the chancellor applied the **Ferguson** factors on remand in rendering his decision as to the division and distribution of the marital property as instructed by this Court in **Owen I**.  However, despite the **Ferguson** factors being listed and the findings of fact stated as to the applicable factors, the chancellor failed to provide any conclusions of law on remand for our appellate review to explain leaving the 60/40 division from **Owen I** unchanged.

¶38.    In **Owen I**, the chancellor did provide a conclusion of law as to the 60/40 division finding that because Kenneth was the primary financial contributor to the accumulation of the marital assets, Kenneth was entitled to receive a greater percentage of the marital assets than Margaret.  Likewise, Margaret's monthly earning of $1,250 is 40% of Kenneth's monthly income of $3,107. As stated in **Owen I**, this Court held that the chancellor's

23

conclusion of law improperly focused on Kenneth's financial contribution in distributing the marital assets.

¶39. Based on the chancellor's failure on remand to illustrate, analyze or provide a conclusion of law to explain how each of the applicable *Ferguson* factors and findings of fact affected his consideration of an equitable division and distribution of the marital property, we reverse the judgment of the Chancery Court of Union County, Mississippi, and remand the case to the Chancery Court. On remand, the chancellor shall provide an application of the *Ferguson* factors, findings of fact, and a conclusion of law to explain how he arrived at his determination of what constitutes equitable division and distribution of the marital property, regardless of the percentages he assigns.

¶40. Likewise, we find the chancellor did not provide a detailed analysis in his supplemental opinion and judgment in order to explain how the chancellor arrived at the judgment in the amount of $5,000 imposed against Margaret to offset for the items that she failed to produce for sale. As such, the case is also reversed and remanded to the Chancery Court of Union County, Mississippi, regarding the $5,000 judgment imposed against Margaret in order for the chancellor to readdress this issue consistent with this opinion.

¶41. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

24