IRVING, J.,
for the Court.
¶ 1. John Willard Graham and Katrina Kay Knight Graham agreed to an irreconcilable differences divorce. John and Katrina were able to reach an agreement on some issues; however, others were submitted to the Lauderdale County Chancery Court for decision. After hearing the evidence, the chancellor entered a judgment dividing the marital estate. Aggrieved, John appeals and asserts that the chancellor did not divide the assets equitably.
¶ 2. We find no error in the choices made by the chancellor. Therefore, we affirm.
FACTS
¶ 3. John and Katrina were married on August 11, 1989, in Kemper County, Mississippi. The couple have one child, William Anthony Graham, born April 22,1989. The parties agreed to joint legal custody, with physical custody granted to John. The parties also agreed to give John the exclusive use, possession and ownership of the marital home. The agreement gave Katrina a motor home and a van. Among other issues, John and Katrina could not agree on who should receive Graham’s Curb Store, a convenience store run by the couple, or on an equitable division of other marital assets. Therefore, those issues were submitted to the court for adjudication.
¶4. At trial, Katrina testified that she was working as a convenience store man *453 ager for Faye Palmer when she learned that Palmer was planning to sell the store. She stated that after discussing it with John, they decided to purchase the store. However, John testified that purchasing the store was his idea and that Katrina showed no interest in the store. The parties borrowed a total of $65,000 from Citizens National Bank: $55,000 to purchase the store, and $10,000 to use as operating capital. About two months after purchasing the store, John and Katrina separated.
¶ 5. Katrina testified that she and John agreed that she would oversee the operation of the store, taking $400 a week as compensation, and John would continue to work as a diesel mechanic and truck driver until the store turned a profit. However, John quit his job and began working solely at the store. Prior to working at the store, John worked as a diesel mechanic for eight years and as a truck driver for sixteen years. John also has the ability to service air conditioners located in refrigerated trucks. However, at the time of their purchase of the store, he had no experience operating a convenience store.
¶ 6. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Equitable Distribution

¶ 7. Appellate courts have limited review when examining property division and distribution in divorce cases. Owen v. Owen, 928 So.2d 156, 160(¶ 10) (Miss.2006). It is well established that we will uphold the chancellor’s division of marital assets as long as the division “is supported by credible evidence.” Id. (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)). We will uphold the findings of the chancellor, unless “those findings are clearly erroneous or an erroneous legal standard was applied.” Id. at (¶ 11).
¶ 8. In Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), the Mississippi Supreme Court enumerated a list of factors for chancellors to consider in reaching decisions on the equitable distribution of marital property: (1) contribution to the accumulation of marital wealth, (2) disposition of marital assets, (3) market and emotional value of the marital assets, (4) value of non-marital assets, (5) tax and other economic consequences of the property division, (6) deceasing future friction between the parties, (7) the needs of the parties for financial security with due regard to the combination of assets, income and earning capacity, and (8) any other factors in equity.
¶ 9. John relies on Ferguson for the proposition that “fairness should be the prevailing guideline in marital division.” Id. at 929. In Ferguson, the court held that “the chancery court has the authority to order an equitable division of property that has accumulated through the joint efforts and contributions of the parties.” Id. at 927. Further, the court held that an equitable division is not the same as equal division, and it is at the court’s discretion to determine exactly how the property will be divided. Id.
¶ 10. John contends that the chancellor’s decision was substantially unfair in awarding the store to Katrina. The store’s profit for the first eight months of 2005 was $29,592.71, and John uses this figure to estimate that the store’s total profit for 2005 would be around $40,000. Therefore, John contends that Katrina will unfairly receive $40,000 a year for owning the store, while he will have to perform “difficult physical work” to support himself.
¶ 11. The chancellor conducted a thorough analysis of the Ferguson factors and concluded that the store should be awarded to Katrina. Katrina has a tenth grade *454 education and has never worked anywhere other than convenience and grocery stores. By contrast, John has experience working in other areas, such as truck driving and certain mechanical work. Therefore, Katrina has much less marketability for her skills than does John.
¶ 12. In determining the equitable distribution of the marital property, the chancellor noted that “[t]he allocation of property, both real and personal gives Mr. Graham far more equity in property than Mrs. Graham. \.. The curb store is a mechanism by which Mrs. Graham can earn a living but there is no actual equity in the curb store as the loan exceeds the value of the business.”
¶ 13. We note that the parties dispute the value of the marital home and the amount of equity in it. Katrina contends that the house is worth $88,430, with an equity of $38,858.25, while John estimates the value of the house to be $71,000, with an equity of $21,256.45. Nevertheless, John argues that the chancellor erred in ordering that he pay Katrina $11,000 to equalize the equitable distribution of real and personal property set. out in the parties’ consent for divorce.[1] We understand John’s argument to be that the value of the store was such that he should not have also been required to pay Katrina $11,000.
¶ 14. The chancellor never explicitly explained how she arrived at the $11,000 figure. John contends that the chancellor reached this amount by taking half of the value of the equity in the marital home that John was awarded. We note' that, even if we were to accept John’s valuation of the store as worth $55,000, the difference between the value of the store and the value of the marital home would be $16,000, as John estimates that the house is worth $71,000. Admittedly, $11,000 is more than half of $16,000. However, a chancellor is tasked with making an equitable, not equal, distribution of the marital estate. Further, in making the equitable distribution, the chancellor must take the entirety of the marital estate into consideration, not just a single item. Based on the reasons stated above, we find that the chancellor’s order is supported by credible evidence and John’s contentions to the contrary are without merit.

2. Periodic Alimony

¶ 15. John contends that he is entitled to periodic alimony because the chancellor awarded the store to Katrina, but failed to characterize the store as an “operating business.” John does not cite any case law to support his argument, nor does he explain how the chancellor’s result would have been different even if she had classified the store as an operating business. ■ We note that the chancellor did in fact take John’s position into consideration as evidenced by her statement that, “Mr. Graham will need support until such time as he can obtain appropriate employment commensurate with his work skills.” To provide this support, the chancellor ordered Katrina to pay John $2,500 a month, for three months. This Court finds that John is not entitled to receive any additional alimony.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF LAUDER-DALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.

. It is undisputed that there is no equity in the store.