IRVING, J., for the Court.
¶ 1. James Allen Owens Jr. appeals from an order of the Chickasaw County Chancery Court awarding him one-fourth of his former wife’s Walmart retirement plan. James asserts that the chancellor committed manifest error and abused his discretion in finding that he was entitled to only one-fourth of her retirement plan.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶3. This is the second time that this case has been before this Court. Our initial opinion is reported at Owens v. Owens, 950 So.2d 202 (Miss.Ct.App.2006) (Owens I). In Owens I, the chancellor equitably divided the parties’ marital assets, including Martha’s Walmart retirement plan. Id. at 213(¶ 43). James was awarded a little over one-sixth ($10,000) of the retirement plan, which was valued at $59,398.27. Id. This Court reversed and remanded after determining that the chancellor had applied an erroneous legal standard during his division of the retirement plan. Id. at 215(¶ 49).
¶ 4. We specifically instructed the chancellor as follows: (1) to address all relevant Ferguson factors,[1] making sure to discuss the factor which relates to the parties’ respective incomes and their ability to provide for themselves; (2) not to consider factors that bear no relevance to the equitable distribution of the retirement plan, particularly Martha’s intent to use the fund to educate her children and James’s inability to pay child support payments; and (3) to determine the parties’ domestic/non-economic contributions. Id. at 213-15 (¶¶ 40-49).
¶ 5. On remand, the chancellor addressed all applicable Ferguson factors in his determination of the distribution of the retirement plan; however, he also mentioned Martha’s contribution toward one of the children’s college expenses while addressing one of the Ferguson factors. Ultimately, the chancellor awarded James one-fourth ($14,849.57) of the retirement plan.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 6. In reviewing property division and distribution in divorce cases, our standard of review is limited. Owen v. Owen, 928 So.2d 156, 160(1110) (Miss.2006) (citing Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997)). The chancellor’s decision in property division will be upheld if it is supported by substantial credible evidence. Id. (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)). An appellate court “will not hesitate to reverse if it finds the chancellor’s decision is manifestly wrong, or that the court applied an erroneous legal standard.” Id. at (¶ 11) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)).
*605 ¶ 7. “[A] chancellor may divide marital assets, real and personal, as well as award periodic and/or lump[-]sum alimony, as equity demands.” Savelle v. Savelle, 650 So.2d 476, 479 (Miss.1995) (quoting Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994)). However, this division does not require a fifty-fifty split. Id.
¶ 8. In Ferguson, 639 So.2d at 928, the Mississippi Supreme Court established a list of factors that should be considered when determining the equitable distribution of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
e. Contribution to the education, training or’ other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise;
3. The market value and the emotional value of the assets subject to distribution;
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8.Any other factor in which equity should be considered.
¶ 9. James asserts that the chancellor’s decision to award him only one-fourth of the retirement plan was in part, negatively influenced by a factor that this Court, in Owens I, instructed the chancellor not to consider — Martha’s contribution toward the children’s college expenses. James further asserts that the chancellor did not consider his domestic or non-economic contributions toward the household and argues that he is entitled to one-half of the retirement plan.
¶ 10. The record reflects that the chancellor mentioned Martha’s contribution toward the children’s college expenses while addressing one of the Ferguson factors. However, there is no evidence that the chancellor was negatively influenced by her contribution in his division of Martha’s retirement plan. We, therefore, affirm the chancellor’s decision to award James only one-fourth of the retirement plan, as the chancellor made adequate findings to support his decision in this regard during his analysis of the Ferguson factors. We now turn to the chancellor’s discussion of those factors.

(a) Substantial contribution to the accumulation of the property: Direct or 
*606
indirect economic contribution to the acquisition of marital property.

¶ 11. In the judgment of divorce, the chancellor only considered Martha’s economic contributions under this factor and concluded that she contributed more than James. On appeal, this Court instructed the chancellor to consider the parties’ non-economic contributions as well. On remand, the chancellor found that Martha made greater economic contributions, as well as greater domestic contributions to the acquisition of the Walmart retirement plan. The judgment on remand reflects the following findings made by the chancellor:
From the day of the marriage, Martha worked full time and performed virtually all of the domestic duties. Until the separation, she prepared all the meals and did 75 percent of the housework. Martha managed all of the money and paid all of the family bills. After James became disabled, he tended to the laundry and washing of the dishes. He became disabled when Magen was two and Jamie was [nine]. He provided daycare for Magen until she went to school and provided transportation for both children to school.
* * * *
Apparently, according to the Mississippi Workers’ Compensation Commission, James is partially disabled.
James has only applied for employment two times since his disability. He mows the lawn, works on automobiles and did some of the remodeling on the home after his alleged total disability. Therefore, Martha has made greater economic and domestic contributions to the acquisition of the Wal-Mart Plan.

(b)Substantial contribution to the accumulation of the property: Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

¶ 12. The chancellor found that both parties have been supportive of each other in their respective occupations during the marriage, except for James’s disruption at Martha’s place of employment.

(c) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any property distribution of such assets.

¶ 13. Here, the chancellor found that this factor was not applicable because neither party had disposed of nor expended any marital assets.

(d) The market value and emotional value of the assets subject to distribution.

¶ 14. In addressing this factor, the chancellor determined that Martha had more emotional attachment to the Wal-mart retirement plan because she had worked there for more than twenty years. However, the court recognized that James’s helping out with the children allowed Martha to maintain her employment with Walmart and thereby acquire the retirement plan.

(e) Tax and other economic consequences.

¶ 15. The chancellor found this factor inapplicable.

(f) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties.

¶ 16. Here, the chancellor found that the retirement plan could be divided in such a manner to avoid future friction between the parties.

(g) The needs of the parties and their income and earning capacities.

*607 ¶ 17. In addressing this factor, the chancellor acknowledged that he was “particularly criticized by the Appeals Court for not making this consideration.” The chancellor found that Martha’s expenses were outweighed by her income and that James’s income was more than his expenses. As previously mentioned, despite this Court’s instruction to “take care to not take into account factors that bear no relevance to an equitable division of the retirement fund,” the chancellor went on to discuss Martha’s contribution to one of the children’s college expenses.
¶ 18. After applying the Ferguson analysis, the chancellor awarded James one-fourth ($14,849.57) of the retirement plan. Although the chancellor considered a factor that had no bearing on the division of the retirement plan, we will not reverse the chancellor’s award. As mentioned above, we defer to a chancellor’s factual findings when he applies the correct legal standard and there is substantial evidence to support his findings. We also note that equitable distribution does not demand that an asset be divided equally.
¶ 19. The chancellor applied every applicable Ferguson factor. Although we find that the chancellor should not have mentioned Martha’s contribution toward the children’s college expenses while discussing the needs of the parties and their income and earning capacities, we find no harm inured to James’s detriment. As stated, the chancellor made adequate findings to support his division of Martha’s retirement account. The chancellor favored Martha in every factor except those that are not applicable to the retirement plan. The chancellor also found that James was responsible for one-fourth of the non-economic contribution to the acquisition of the retirement plan — an amount proportionate to the amount of the retirement plan awarded to him. Although none of the Ferguson factors favored James, the chancellor, on remand, increased James’s share of the retirement plan from a little over one-sixth ($10,000) to one-fourth ($14,849.57). Accordingly, this contention of error is without merit.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. We list and address these factors later in our analysis and discussion of the issue.