GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. John Chmelicek appeals the financial obligations the chancellor imposed upon him in the judgment of divorce. John argues that the chancellor was in error in the equitable distribution of property, the award of lump-sum and periodic alimony, and in the award of attorney’s fees. We find reversible error and remand.
 

 FACTS
 

 ¶ 2. John and Dianna Chmelicek were married in Montreal, Canada, on February 14, 1987. On July 18, 2007, Dianna filed a complaint for divorce in the Chancery Court of Forrest County, Mississippi.
 
 *1002
 
 John and Dianna were married for more than twenty years.
 

 ¶ 8. They had two children. Katie was born August 7, 1989, and at the time of the divorce, she was in college. Kristen was born May 20, 1991, and at the time of the divorce, she was in high school.
 

 ¶ 4. John was trained in Canada as a medical doctor. In 1992, John and Dianna moved from Canada to Hattiesburg where John was employed by the Hattiesburg Clinic and Immediate Care. Dianna was primarily a housewife and held a few jobs in the beginning of the marriage. In 2006, Dianna began a small photography business.
 

 ¶ 5. The trial of this matter occurred on March 24, 26, and May 28, 2008. Prior to the trial, the parties stipulated that a divorce should be granted to Dianna based on the ground of John’s adultery; the parties would have joint legal custody of the children; Dianna would have physical custody of the children; and John would have visitation with the children. The issues that remained for the chancellor to decide were the equitable division of property, alimony, child support, and attorney’s fees.
 

 ¶ 6. On July 2, 2008, the chancellor entered a judgment of divorce. Dianna was granted a divorce based on John’s uncon-doned adultery. The judgment held:
 

 a. Dianna was awarded child support in the amount of $4,400 per month.
 

 b. John was to maintain his current life-insurance policies, with coverage of $350,000, and name the children as beneficiaries.
 

 c. John was awarded ownership of the marital home, and Dianna was “given credit for one half of the existing equity, or $8,500.”
 

 d. The parties’ liabilities included a Canadian tax lien in the amount of $221,820.97; $150,000 owed to John’s father; $86,685 in credit-card debt; $115,611 owed on vehicle financing; and a $481,000 home mortgage. The total liability was $1,054,296, “a figure that far exceeds the assets of the parties.” Dianna was responsible for the vehicle financing on her car and the cars driven by the children. John was responsible for all other liabilities.
 

 e. John “is capable and does generate a net income of approximately ... $20,000 monthly.” Dianna “should be able to generate an income of approximately $2,000 or more a month.”
 

 f. John had a 401 (k) retirement account with Fidelity Investments. As of March 25, 2008, the first day of trial, the account had a balance of $303,244.43, “which shows that he withdrew $123,930.94” during the parties’ separation. Thus, the chancellor considered the marital estate to include a 401 (k) with a balance of $427,175.37 — the total balance before John’s withdrawal. The chancellor ordered the funds be divided equally. Dianna was to receive “one half plus $8,500 representing her one half of the equity in the marital home.” Dianna was also awarded “lump sum alimony payment of $61,965.47, representing one half of the 401(k) withdrawn by [John] in 2007, said [sum] to be due and payable in 36 months from the date of this judgment.”
 

 g. Each party is to keep the household goods and personalty currently in their possession.
 

 h. The chancellor awarded Dianna $6,000 per month in alimony and held:
 

 “Finding that [Dianna] has some income generating ability developed during the marriage, the Court is left with another finding that [Dianna] will be unable to live financially [as] her life has developed with [John] without some financial aid in the form of ali
 
 *1003
 
 mony being afforded to her.
 
 Hubbard v. Hubbard,
 
 656 So.2d 124 (Miss.1995). Exhibit 2 reflects the monthly needs of [Dianna], sans credit cards, to be $7,035.70. With her ability to generate some income, [Dianna] is awarded periodic alimony of $6,000.00 monthly, to begin July 1, 2008 to be paid through the office of the Chancery Clerk of Lamar County, Mississippi. The Court is cognizant of the actions of [John] in wasting potential marital assets during the marriage, but finds these are largely present now in debt which he must pay. Debt, as shown by the exhibits, which includes the lifestyle of the parties in acquiring real and personal property, travel and activities of both [Dianna], [John] and their children, in search of family harmony over the years of their marriage. In making this award of periodic alimony the Court has considered the incomes, ages and expenses of the parties, their earning capacities, needs, assets of each, length of marriage, standard of living, tax consequences, fault and misconduct of [John] and dissipation of assets.
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278 (Miss.1993).”
 

 i. Each party shall contribute to the college expenses, not covered by scholarships, with Dianna paying 12.5% and John paying 87.5%.
 

 j. Dianna was awarded attorney’s fees in the amount of $20,000.
 

 ¶ 7. John and Dianna had only a few assets. The marital home was valued at $500,000 by John and $520,000 by Dianna. The chancellor valued it at $500,000 and determined the couple had $19,000 of equity in the house. They owned four cars, including one for each child.
 
 [1]
 
 While the chancellor determined that $115,611 was owed on the cars, he also determined that there was little if any equity in the cars. It is from this judgment that John appeals.
 

 ¶ 8. After the appeal was filed, Dianna filed a Request to Supplement the Record. Dianna asked the appellate court to take judicial notice of John’s intervening bankruptcy filing in the United States Bankruptcy Court for the Southern District of Mississippi. The Request included copies of bankruptcy schedules and decrees. From this information, it appears that John filed for bankruptcy on November 6, 2008; the bankruptcy was converted from a Chapter 13 to a Chapter 7 on March 19, 2009; and the final bankruptcy decree was entered on August 7, 2009. John indicated his assets were valued at $862,483, and his liabilities totaled $1,493,402. The schedules also indicated a change in John’s address to Edmonton, Alberta, Canada. John’s debts listed in the bankruptcy schedules included debts to Dianna totaling $107,966.30, John Chmelicek totaling $179,000, Citi Mortgage (home mortgage) totaling $488,059, the loans on all vehicles, and what appears to be all of the credit-card debts.
 

 ¶ 9. By order dated October 27, 2009, Supreme Court Justice James W. Kitchens entered an order that granted Dianna’s Request to Supplement the Record. Accordingly, we consider these documents as part of the record.
 

 STANDARD OF REVIEW
 

 ¶ 10. The Mississippi Supreme Court in
 
 Lowrey v. Lowrey,
 
 25 So.3d 274, 285 (¶ 26) (Miss.2009) recently provided a detailed
 
 *1004
 
 statement of the appropriate standard of review, stating:
 

 “ ‘A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous.’ ”
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625 (Miss.2002) (quoting
 
 Consol. Pipe & Supply Co. v. Colter,
 
 735 So.2d 958, 961 (Miss.1999)). “However, the Court will not hesitate to reverse if it finds the chancellor’s decision is manifestly wrong, or that the court applied an erroneous legal standard.”
 
 Owen v. Owen,
 
 928 So.2d 156, 160 (Miss.2006). A chancellor’s conclusions of law are reviewed de novo.
 
 Chesney v. Chesney,
 
 910 So.2d 1057, 1060 (Miss.2005) (citing
 
 Southerland v. Southerland,
 
 875 So.2d 204, 206 (Miss.2004)). The distribution of marital assets in a divorce will be affirmed if “ ‘it is supported by substantial credible evidence.’ ”
 
 Bowen v. Bowen,
 
 982 So.2d 385, 393-394 (Miss.2008) (quoting
 
 Owen,
 
 928 So.2d at 160). A chancellor is required to make findings of fact regarding all applicable
 
 Ferguson
 
 factors.
 
 See Kilpatrick v. Kilpatrick,
 
 732 So.2d 876, 881 (Miss.1999);
 
 Ferguson,
 
 639 So.2d at 928. “[MJarital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship.”
 
 Carrow v. Carrow,
 
 642 So.2d 901, 904-05 (Miss.1994).
 
 See also Brabham v. Brabham,
 
 950 So.2d 1098, 1101-02 (Miss.Ct.App.2007). “[A]n equitable division of property does not necessarily mean an equal division of property.”
 
 Chamblee v. Chamblee,
 
 637 So.2d 850, 863-64 (Miss.1994). “Fairness is the prevailing guideline in marital division.”
 
 Ferguson,
 
 639 So.2d at 929.
 

 ANALYSIS
 

 ¶ 11. The primary issues in this appeal relate to the division of marital assets and the award of lump-sum and periodic alimony. In
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 929 (Miss.1994), the Mississippi Supreme Court held:
 

 There are some observations which need to be made in regard to division of marital assets. Initially, this Court notes that existing law regarding periodic alimony and child support is not altered. Upon dissolution of a marriage, the chancery court has the discretion to award periodic and/or lump sum alimony, divide real and personal property, including the divesting of title, and may consider awarding future interests to be received by each spouse. Additionally, homemaker contributions are not to be measured by a mechanical formula, but on the contribution to the economic and emotional well-being of the family unit. Some courts have held that equitable distribution of property has as its goal not only a fair division based upon the facts of the case, but also an attempt to finalize the division of assets and conclude the parties’ legal relationship, leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution.
 

 Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division.... All property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together. “Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede.” Thus, the chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands. To aid appellate review, findings
 
 *1005
 
 of fact by the chancellor, together with the legal conclusions drawn from those findings, are required.
 

 In the final analysis, all awards should be considered together to determine that they are equitable and fair.
 

 (Internal citations omitted).
 

 ¶ 12. In
 
 Johnson v. Johnson,
 
 650 So.2d 1281, 1287 (Miss.1994), the supreme court provided the proper sequence for the chancellor’s determination. First, the chancellor should determine whether the parties’ assets are marital or nonmarital.
 
 Id.
 
 Second, the marital property should be “equitably divided, employing the
 
 Ferguson
 
 factors as guidelines, in light of each parties’ nonmarital property.”
 
 Id.
 
 Then, if the divided assets, when considered with each parties’ nonmarital assets, “will adequately provide for both parties, no more need be done.”
 
 Id.
 
 If one party has a deficit, “then alimony based on the value of nonmarital assets should be considered.”
 
 Id.
 

 ¶ 13. This case is quite unusual. The vast majority of marital dissolution cases before this Court deal with the division of property in the traditional sense. The parties want the chancellor to award assets, such as homes, cars, bank accounts, investment accounts, businesses, etc. In this case, there are only a couple of assets. With the exception of the Fidelity 401 (k) and the household personal assets, the remaining assets are worthless or upside down (meaning the value of the asset is less than what is owed). The chancellor considered all of the property as marital. The chancellor divided the 401 (k) equally. The chancellor was then left with a decision about how to divide the tremendous amount of debt and how to divide John’s future earning capacity to provide for the children, his now ex-wife, himself, and to pay the marital debt.
 

 ¶ 14. Before we begin our review, we must discuss how we will consider the supplemental record. With permission of the supreme court, Dianna supplemented the record and included John’s subsequent bankruptcy filings. Dianna asked the Court to take judicial notice of John’s bankruptcy. There is no doubt that John’s bankruptcy has had a legal effect on his obligation to pay the marital debt. However, despite the supplementation of the record, neither party has provided this Court with a supplemental brief that attempts to explain the effect of John’s bankruptcy on the issues that are before this Court. Hence, we are unable and unwilling to venture into an appellate review of this case based on this Court’s legal analysis of how the bankruptcy may have changed the obligations or responsibilities of the parties. Instead, our review is limited to the matters considered by the chancellor.
 

 A. Equitable Distribution of Assets
 

 ¶ 15. The chancellor determined that all of the parties’ property was marital. Thus, the chancellor had to divide the marital assets equitably according to the
 
 Ferguson
 
 factors, which are:
 

 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
 

 a. Direct or indirect economic contribution to the acquisition of the property;
 

 b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
 

 c. Contribution to the education, training or other accomplishment
 
 *1006
 
 bearing on the earning power of the spouse accumulating the assets.
 

 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
 

 3. The market value and the emotional value of the assets subject to distribution.
 

 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
 

 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
 

 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
 

 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
 

 8. Any other factor which in equity should be considered.
 

 Ferguson,
 
 639 So.2d at 928.
 

 ¶ 16. The supreme court has held that “[t]he failure to consider all applicable
 
 Ferguson
 
 factors is error and mandates reversal.”
 
 Lowrey,
 
 25 So.3d at 286 (¶ 29). However, the chancellor need not make findings regarding each
 
 Ferguson
 
 factor but may consider only those factors “applicable” to the property in question.
 
 Sproles v. Sproles,
 
 782 So.2d 742, 748 (¶ 25) (Miss.2001) (citing
 
 Weathersby v. Weathersby,
 
 693 So.2d 1348, 1354 (Miss.1997)).
 

 f 17. John argues that the chancellor committed error in his consideration of the
 
 Ferguson
 
 factors. John attempts to analyze the chancellor’s judgment in light of these factors. We have attempted to do likewise.
 

 ¶ 18. In
 
 Ferguson,
 
 the supreme court directed chancellors to evaluate the division of marital assets by certain guidelines and “to support their decisions with findings of fact and conclusions of law for purposes of appellate review.”
 
 Ferguson,
 
 639 So.2d at 928. Here, the chancellor’s judgment does not include specific findings of fact or conclusions of law that would indicate that the chancellor considered each of the
 
 Ferguson
 
 guidelines and how he applied the guidelines to the evidence presented in this case. Instead, the chancellor’s judgment simply announces his division of the marital property and other financial awards.
 

 ¶ 19. In
 
 Sandlin v. Sandlin,
 
 699 So.2d 1198, 1204 (Miss.1997), the chancellor made the marital property distribution and mentioned the
 
 Ferguson
 
 guidelines along with a representation that he applied them to the evidence presented.
 
 Id.
 
 at 1204. The chancellor’s judgment failed to make the requisite findings of fact and conclusions of law. The supreme court held that it “could not evaluate the basis that [the chancellor] used to determine the division of property.”
 
 Id.
 
 As a result, the supreme court ruled that “the failure to make findings of fact and conclusions of law was manifest error requiring reversal and remand.”
 
 Id.
 

 ¶ 20. In
 
 Kilpatrick v. Kilpatrick,
 
 732 So.2d 876, 881 (¶ 19) (Miss.1999), the supreme court again reversed a chancellor’s judgment for failing to make the required findings of fact and conclusions of law regarding the distribution of the marital estate. The chancellor itemized the
 
 *1007
 
 actual property division, but he made no conclusions of law to support the division of the marital estate.
 
 Id.
 
 at 880-82 (¶¶ 14-24). The supreme court reversed and remanded the case for specific findings of fact stating that “[w]ithout findings from the [e]hancellor concerning this income or use of income, we cannot determine if the distribution of property outlined above meets the standards of equitable distribution required by
 
 Ferguson.” Id.
 
 at 881 (¶19).
 

 ¶ 21. Here, the chancellor divided the property. The chancellor’s judgment failed to make any conclusions of law as to how the
 
 Ferguson
 
 factors were applied to support the division of the marital estate. Thus, based on
 
 Sandlin
 
 and
 
 Kilpatrick,
 
 the chancellor’s failure to explain the basis for his decision requires that we find manifest error. Thus, we reverse and remand this case to the chancellor to make specific findings and conclusions of law as to the
 
 Ferguson
 
 guidelines and the equitable division of property.
 

 B. Periodic Alimony
 

 ¶ 22. The chancellor awarded $6,000 per month to Dianna of periodic alimony. In
 
 Henderson v. Henderson,
 
 703 So.2d 262, 266 (¶ 21) (Miss.1997), the supreme court reversed an award of alimony and remanded the case for an “on-the-record determination of the economic issues presented as required by
 
 Ferguson
 
 and
 
 Johnson.”
 
 Here, the chancellor’s reasoning for the alimony award is quoted in full above. The initial question for this Court to decide is whether the chancellor’s judgment was sufficient for the Court to affirm the award of periodic alimony in light of
 
 Henderson, Johnson,
 
 and
 
 Ferguson,
 
 relying simply on a totality of the circumstances.
 
 See Godwin v. Godwin,
 
 758 So.2d 384, 387-88 (Miss.1999).
 

 ¶ 23. In
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993), the supreme court identified the factors “to be considered by the chancellor in arriving at findings and entering judgment for alimony.” The factors are:
 

 1. The income and expenses of the parties;
 

 2. The health and earning capacities of the parties;
 

 3. The needs of each party;
 

 4. The obligations and assets of each party;
 

 5. The length of the marriage;
 

 6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
 

 7. The age of the parties;
 

 8. The standard of living of the parties, both during the marriage and at the time of the support determination;
 

 9. The tax consequences of the spousal support order;
 

 10. Fault or misconduct;
 

 11. Wasteful dissipation of assets by either party; or
 

 12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
 

 Id.
 

 ¶ 24. John argues that the chancellor erred because: he used the wrong legal standard by not correctly applying the
 
 Armstrong
 
 factors; the award was excessive; and Dianna should have been awarded rehabilitative alimony instead of periodic alimony.
 

 ¶ 25. We have attempted to review the award of periodic alimony based on a totality of the circumstances. We con-
 
 *1008
 
 elude that the chancellor’s reasoning does not amount to an on-the record analysis of the relevant
 
 Armstrong
 
 factors. Indeed, the chancellor’s judgment provides a couple of conclusory statements and says that the chancellor considered the
 
 Armstrong
 
 factors. There are several of
 
 Armstrong
 
 factors that required an in-depth analysis.
 

 ¶ 26. John was a hard-working and highly compensated medical doctor. Although his annual gross income was in excess of $400,000, John’s income was not sufficient to maintain the family’s extravagant lifestyle. Even if the marriage had continued, John and Dianna would eventually have had to either earn more income, cut back on their spending, or file for bankruptcy. Although John was admittedly at fault for the dissolution of the marriage, the chancellor had an obligation to dissolve the marriage and their financial relationship in a manner that was equitable, fair, and just.
 

 ¶27. We cannot affirm the award of periodic alimony where the chancellor has failed to provide an on-the-record analysis of the
 
 Armstrong
 
 factors. Indeed, this case required the chancellor to explain how he analyzed the alimony award as “just and equitable” in light of both parties’ obligations to pay or otherwise satisfy the tremendous amount of marital debt that resulted from the marriage. Certainly, John’s and Dianna’s lives will change. The chancellor must explain his reasoning as to how, through the judgment of divorce, the marital debts were to be paid or how their lifestyles would be altered in order to satisfy their marital debts. Accordingly, we find that the chancellor’s failure to provide an on-the-record analysis of the
 
 Armstrong
 
 factors requires that we find manifest error. Thus, we reverse the award of periodic alimony and remand for the chancellor to make specific findings of fact and conclusions of law to support the award of alimony.
 

 C. Lump-Sum Alimony and Attorney’s Fees
 

 ¶ 28. John also claims the chancellor committed error in the award of lump-sum alimony and attorney’s fees.
 

 ¶ 29. In
 
 Lauro v. Lauro,
 
 847 So.2d 843, 850 (¶ 17) (Miss.2003), the Mississippi Supreme Court determined that since the case was remanded for further consideration of equitable division, the chancellor should be instructed “to revisit the awards of alimony and child support after he has properly classified and divided the marital assets.” Thus, since this case has been remanded for further consideration of equitable division of assets and periodic alimony, on remand the chancellor will have all the tools of marital dissolution available: equitable division, lump-sum alimony, and periodic alimony. Likewise, the chancellor may revisit the award of attorney’s fees.
 

 D. Remaining Issues
 

 ¶ 30. John also raised several additional issues. However, since the judgment is reversed and this case is remanded, the remaining issues are moot and will not be addressed.
 

 ¶ 31. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. IRVING, J.,
 
 *1009
 
 DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . John also testified that he owned a Harley Davidson motorcycle and a recreational vehicle. However, he stated that both were sold before the trial was completed, and the proceeds from the sale were applied to the outstanding loans.