ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice, for the Court:
¶ 1. In this custody battle between a child’s mother and grandparents, the chancellor heard evidence that the child’s mother was sexually promiscuous, that she had failed drug tests, and that she planned to move with the child to Chicago to live with a convicted sex-offender. The chancellor also heard evidence to the contrary. Based on this evidence, and judging the credibility of the witnesses before him, the chancellor found that the natural-parent presumption had been overcome and, after conducting a proper Albright analysis, that the best interests of the child would be served by granting custody to-the grandparents.[1] We affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. DeniSe Irle and David Foster were never married but had two children — Britney and Chase. David served as the children’s primary caretaker until Britney was ten and Chase was eight. But after David passed away, the children went to live with *1234 Irle. At that point, Patty and Lavirl Foster—David’s parents—petitioned the, chancery court for custody of both children, and the chancellor entered an agreed order giving Irle custody of Britney and the Fosters custody of Chase. Then the Fosters learned that the Department of Human Services had removed Britney from Irle’s home, so they returned to the chancery court seeking custody of her as well.
¶ 3. The chancellor awarded the Fosters temporary custody, appointed a guardian ad litem, and held a hearing, after which he held that the Fosters had presented sufficient credible evidence to overcome the natural-parent presumption, and that Britney’s best interests would be served by awarding custody to the Fosters. Irle appealed, and the Mississippi Court of Appeals affirmed, finding that the evidence supported the chancellor’s decision. The Court of Appeals specifically rejected Irle’s argument that the chancellor also should have considered whether a material change in circumstances had occurred since the original custody order was entered.
¶ 4. We granted certiorari and affirm the judgment of the chancellor. And although we agree with the result reached by the Court of Appeals, we find that the chancellor was required to—and did—consider whether a material change in circumstances had occurred.
ANALYSIS
¶ 5. We will reverse a chancellor’s custody determination “if it was manifestly wrong or clearly erroneous, or if the chan-eellor applied an erroneous legal standard.” [2] That is, the chancellor must apply the correct law and his ruling must be supported by credible evidence.[3] Here, he did and it was.
I. The Legal Standard at Issue
¶ 6. This case presents a custody battle between Britney’s grandparents and natural mother, all who previously had agreed with a court order awarding custody to the mother. The central question presented is what the grandparents were required to prove to wrestle custody away from the mother. It is well-settled that third parties—such as the Fosters in this case—must overcome the law’s presumption that custody should remain with a natural parent because they do not stand on equal footing with the mother.[4] The question is how this may be accomplished.
¶ 7. Whatever doubt there may be about the grandparents’ burden, it is universally understood and accepted that a natural parent seeking to modify custody must demonstrate some change in the circumstances that were presented to the chancellor that led to the previous decree, and must show that the changed circumstances are material.[5]
¶ 8. But thirty-five years ago in Thomas v. Purvis, this Court stated that “[t]he principle that there must be a material change of circumstances which adversely affects a child’s welfare before a custody decree may be modified only applies be *1235 tween parents of the child.”[6] For two reasons, we find this sweeping statement needs clarification and correction.

The Error in this Court’s Precedent

¶ 9. First, Thomas cited Rodgers v. Rodgers as authority for the broad proposition that a material change in circumstances must be demonstrated only in cases involving natural parents.[7] But nothing this Court said in Rodgers supports this proposition. The chancellor in that case — after concluding that a material change in circumstances had occurred, but without considering the natural-parent presumption — modified an original divorce decree to transfer custody of a minor child from the child’s natural mother to the child’s paternal grandparents.[8] The mother appealed, arguing that she enjoyed the natural-parent presumption, and that the grandparents had presented insufficient evidence to rebut that presumption.[9]
¶ 10. This Court agreed with the mother, recognizing that a natural parent may not be deprived of custody in favor of a third party unless the third party rebuts the natural-parent presumption by clear and convincing evidence.[10] The Rodgers Court certainly did not intend to place a burden on a natural parent that it did not place on third parties, thereby making it more difficult for the natural parent to prevail in a custody battle. Stated another way, if a natural parent is required to demonstrate a material change in circumstances in order to win custody, then certainly a third party has at least that same burden.
¶ 11. Importantly, the Rodgers Court reversed solely because the grandparents failed to rebut the natural-parent presumption, and it never considered or discussed whether the grandparents did or did. not have an additional burden to show a material change in circumstances.[11]

The Factual Differences

■ ¶ 12; Unfortunately,- it is not uncommon for natural parents to engage in numerous custody battles. But rarely do third parties — such as grandparents — attempt more than once to take custody from- natural parents. This led to the second error in the Thomas Court’s reasoning, which was that it had failed to consider that there would be rare cases — such as the one before us today — -where the third parties seeking to take custody from natural parents already had been before the court in a previous'custody battle. So, while the logic is obvious that the material-change-in-circumstances test does not apply to third parties appearing for the first time before the chancery court, the same cannot be said where, as here, grandparents previously have been before the court on the very issue of who should have custody. Stated another way, grandparents who already have been before the chancery court in an attempt to remove custody from a natural parent may not reappear before the same chancery court, seeking a change in custody based on the same evidence and circumstances as existed when they first appeared.
¶ 13. So we hold that in cases involving a third party and a natural parent — where the third party has been before the court in a previous custody dispute over the child — the material-change-in-circumstances test applies. A third party attempting to take custody from a natu *1236 ral parent under those circumstances is required to overcome the natural-parent presumption and to show a material change in circumstances from the previous decree.
¶ 14. Said differently, to obtain custody, the Fosters had to prove: (1) that a material change in circumstances had occurred since they last appeared before the chancellor; (2) that the natural-parent presumption had been rebutted; and (8) that the best interests of the child would be served by granting them custody. The chancellor applied this standard and credible evidence supported his judgment.
¶ 15. Justice Pierce’s dissent points but the troubling misconception among some members of the chancery bench and bar who are of the view that agreed custody orders somehow lessen a chancellor’s duty to adjudicate the best interests of the child. We take this opportunity to reinforce the rule that agreed orders do not diminish in any way a chancellor’s duty to make a determination of what is in the best interests of the child. And agreed orders do not constitute exceptions to the requirement of a material change in circumstances for modifications of custody orders. A.M.L. v. J.W.L., 98 So.3d 1001, 1013-16 (Miss.2012). As we have said numerous times, “the paramount and ultimate goal in every child custody case must be the best interests of the child.”[12]
II. The chancellor applied the correct legal standard, so his factual findings must be afforded deference.
¶ 16. First, we note that, under both the Mississippi Rules of Civil Procedure and the Uniform Chancery Court Rules, the chancellor is under no obligation to provide specific findings of fact unless a party requests that he do so.[13] No such request appears in the record. And we have acknowledged specifically that this rule applies in child-custody cases.[14]
¶ 17. But in this case, the learned chancellor did make findings of fact that are clearly set forth in his order and bench ruling. His. order stated “this Court ... finds that a material and substantial change in circumstances has occurred which adversely effects [sic] the. minor children....” So, clearly, the chancellor found that the material-change-in-circumstances requirement applied and had been met, and ,a careful reading of his bench ruling reveals facts upon which he based his finding:
The other factor, of course, is this matter of moving, is that a factor to be considered. The Court does not find-that simply because she’s moving that constitutes necessarily a material change in circumstances'. As I said, that’s her privilege under Bell v. Bell[, 572 So.2d 841, 845 (Miss.1990) ]. But what concerns this Court is by'the testimony of the daughter today, they would be living with — number one, they’re moving to Chicago. Well, enough said. Secondly, they would 'be living with a Couple, Uncle Eric or whatever his characterization is, and Aunt Andrea, who have never saw fit to benefit themselves by the cloak of marriage. And so the little girl testified today, they would be living with them if they went up there, exposing again, the mother has shown *1237 here, as the child had testified to and I believe her, that she would be exposed to living in a household where the people live — the female and the male live without the benefit of lawful wedlock. And this, to me, is not in the best interest of the child in respect to the move. But I realize the moving per se is not a controlling factor in determination of custody.[15]
¶ 18. This entire analysis is couched as a material-change analysis. The chancellor begins by noting that the mother’s new intention to move is, standing alone, insufficient to constitute a material change, but that it reaches that level because of the surrounding facts.
¶ 19. Likewise, the chancellor made explicit findings on the other two relevant criteria in both his written order and his bench ruling. In the written order, he stated “this Court finds that the defendant is morally unfit to have custody of the minor child.... ” In the bench ruling, he stated: “This Court does hereby find that the mother is morally unfit to claim the benefit of the natural parent presumption” and that “this Court finds that [Britney’s] best interest, that the polestar consideration of this Court is that the custody, primary physical custody of that child be awarded to the paternal grandparents.”
III. Credible evidence supported the chancellor’s judgment.
¶ 20. We must afford the’ chancellor’s findings deference and consider only whether credible evidence supports those findings.[16] Here, the evidence amply supported the chancellor’s findings that a material change in circumstances had occurred, that the Fosters had rebutted the natural-parent presumption, and that the minor child’s best interests were served by awarding the Fosters custody. ■
¶21. As discussed above, the chancellor’s material-change analysis focused on Irle’s intent to move to Chicago with the minor child. The chancellor heard conflicting testimony about where Irle and the child would reside, but the minor child testified that they would reside with Eric Brock. Brock has been convicted for sexually abusing a child.
¶ 22. The chancellor, exercising a power that lies with him alone, judged the credibility of the witnesses and determined that he believed the minor child over the conflicting evidence.[17] We must accept that credibility determination. And no reasonable person can argue that. a mother’s intent to move her. child into the home of a sex-offender — especially one whose victim was a child — does not constitute a material change and moral unfitness rebutting the natural-parent presumption.
¶ 23. In the dissent’s opinion, “the testimony shows that Me planned to move to the Chicago area, but that she planned to live with her sister Nora Jefferson.” But we do not reverse trial judges simply because our opinions differ. Trial judges enjoy a deferential standard, and we reverse them .only where their views are unsupported by evidence., Here, the dissent acknowledges that Britney provided testimony that they planned to live in the *1238 same home as Brock. The chancellor was persuaded by this testimony and, with respect, the dissent is without authority to decide what “the [disputed] testimony shows.” That power lies with the chancellor alone, who sat as the fact-finder and heard the testimony firsthand.
¶ 24. And the same is true of the dissent’s view that the material change had been remedied because “Irle testified that she had no plans to live in the same home as Brock.” That testimony did not remedy the material change because the chancellor found that the witness who provided that testimony lacked credibility, and he did not believe her testimony to be true.
¶ 25. The chancellor provided other findings that also support his ruling:
I have observed the demeanor of the witnesses on this witness stand throughout these hearings. And Ladies and Gentlemen, that is very important in this case. I have seriously considered the demeanor of these witnesses as they’ve each one testified in this case, and some have not been impressive to me.
[The] court so finds under this case that even going back — this was brought out in the trial of this case and unobjected to by the parties — that she has four out-of-wedlock children. That the boyfriend, Mr. Voyles — Plowboy, I believe, was his name — I almost called him Playboy. He was the one who occasionally visits with him or she came over to see him with these two children, spent the night there. She said there’s no sexual involvement and he did, too. But, you know, Mr. Voyles was as nervous as a cat on a hot tin roof when he testified here.
It’s interesting to me, as a matter of comment, that the mother this morning testified that they got their divorces the same day from their respective spouses. No wonder he was nervous on the witness stand that day. They both got their divorces from their respective spouses, as evidenced by her testimony here today, and it was brought out in the proof, March 6, 2012, after this case had been recessed for a period of time.
Furthermore, this Court finds that she has actually failed one drug test, a cocaine test administered in October of 2011, by the guardian ad litem. Even though, admittedly, she passed the one the next day when she hired a separate firm to do it. She was visiting with and taking the children in the presence of a married man while she was still married to another man.
This Court find[s] that she’s morally unfit to claim the benefit of this natural parent presumption.
[T]hey would be living with a couple, Uncle Eric or whatever his characterization is, and Aunt Andrea, who have never saw fit to benefit themselves by the cloak of marriage. And so the little girl testified today, they would be living with them if they went up there, exposing again, the mother has shown hei-e, as the child had testified to and I believe her, that she would be exposed to living in a household where the people live— the female and the male live without the benefit of lawful wedlock.
Considering these facts, we conclude that credible evidence supports the chancellor’s judgment.
CONCLUSION
¶26. Because the chancellor applied the correct legal standard and his factual findings were supported by credible evidence, we affirm the judgment of the Chancery Court of Prentiss County. Accordingly, we also affirm the judgment of the Court of Appeals.
¶ 27. AFFIRMED.
*1239 RANDOLPH, P.J., LAMAR, KITCHENS AND COLEMAN, JJ., CONCUR. PIERCE, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.; RANDOLPH, P.J., JOINS IN PART. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

. Smith v. Smith, 97 So.3d 43, 46 (Miss.2012) (citing Johnson v. Gray, 859 So.2d 1006, 1012 (Miss.2003)).

. In re Dissolution of Marriage of Laverock & Hamby, 23 So.3d 424, 427 (Miss.2009) (citing K.D.F. v. J.L.H., 933 So.2d 971, 976-77 (Miss.2006)).

. Rodgers v. Rodgers, 274 So.2d 671, 673-74 (Miss.1973)

. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984).

. Thomas v. Purvis, 384 So.2d 610, 612 (Miss.1980).

. Id. (citing Rodgers, 274 So.2d at 673).

. Rodgers, 274 So.2d at 672.

. Id. at 673.

. Id. at 673-74.

. Id.

. Vaughn v. Davis, 36 So.3d 1261, 1264 (Miss.2010) (quoting In re Dissolution of Marriage of Leverock and Hamby, 23 So.3d 424, 429 (Miss.2009)).

. Miss. R. Civ. P. 52; Miss. Unif. Chancery Ct. R. 4.01.

. Blevins v. Bardwell, 784 So.2d 166, 174 (Miss.2001).

. (Emphasis added.)

. In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d at 427 (citing KD.F., 933 So.2d at 976-77).

. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994) (citing West v. Brewer, 579 So.2d 1261, 1263-64 (Miss.1991); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987); Polk v. Polk, 559 So.2d 1048, 1049 (Miss.1990)) ("A chancellor sits as a fact-finder and in resolving factual disputes, is the sole judge of the credibility of witnesses.”).