# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00469-COA

## CONSOLIDATED WITH

## NO. 2015-CA-00329-COA

| | |
|---|---|
| **BROOKE NEJAM HOFFMAN** | **APPELLANT** |
| **v.** | |
| **MICHAEL JOSEPH HOFFMAN** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2017 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | PAMELA L. HANCOCK<br>JEFFREY BRYAN MCGUIRE |
| ATTORNEYS FOR APPELLEE: | J. PEYTON RANDOLPH II<br>RICK D. PATT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/23/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND TINDELL, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    Brooke Nejam Hoffman sought a divorce from her husband Michael (Mike) Hoffman, alleging as grounds habitual cruel and inhuman treatment and constructive desertion. The chancery court found that Brooke failed to prove that she was entitled to a divorce on either ground and dismissed her complaint. The court also awarded Mike attorney's fees based on both Brooke's contempt and Mike's inability to pay. Brooke challenges both rulings on appeal. For the reasons discussed below, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Brooke and Mike were married in January 2005.  Their marriage has produced three children, born in 2005, 2011, and 2013.  In October 2012, while pregnant with the couple's third child, Brooke moved out of the marital home.  Brooke filed a complaint for divorce in January 2013, about two weeks before the child was born.  She later filed an amended complaint that alleged both habitual cruel and inhuman treatment and constructive desertion.  Mike answered and denied that Brooke was entitled to a divorce.  The case eventually proceeded to trial in July 2014.  The parties agreed to bifurcate the case and first try the grounds for divorce.  The issues of child custody, support, and division of the marital estate were reserved pending the court's ruling on Brooke's entitlement to a divorce.

¶3.     Brooke testified that she and Mike were in counseling "[p]retty much" from the start of their marriage until they separated.  Brooke's mother agreed that the marriage was "troubled" from the start.  She testified that she and her husband (Brooke's father) "kind of talked [Brooke and Mike] into getting married because . . . [Brooke was] pregnant."  Brooke testified that she and Mike "both went to counseling," they would "follow and stick through it for a few weeks" at a time, and there was "some" intimacy in their marriage.  But then they would argue, and "things would get back like they were."

¶4.     Brooke alleged that during an argument in 2011, Mike "stabbed [her] back with a pencil while [she was] holding [their six-month old son] and pulled [her] hair and threw [her] down some steps."  She filed a police report, but she testified that she later decided not to

2

press charges. Brooke testified that photographs, taken by her mother, documented her alleged injuries. However, the police officer who took Brooke's report noted in the report that he "did not see any signs of physical abuse on [Brooke]."

¶5.    The police were also called to the Hoffmans' home during an argument on the night that Brooke left the marital home in October 2012. Brooke testified that the incident initially resulted in charges against her, but the charges were later dropped.

¶6.    Brooke testified that the incident with the pencil was the only "violent episode" during the marriage. However, Brooke and her mother claimed that Mike was verbally abusive. Brooke also alleged that Mike falsely accused her of using drugs during the marriage.[1]

¶7.    Brooke alleged that after she moved out of the marital home, Mike destroyed, threw out, or gave away many of her personal belongings. She also accused Mike of vandalizing her new home with pink paint, although she had no direct proof that he was involved.

¶8.    Brooke admitted that she had an affair in 2010. She told Mike about that affair, and they decided to stay together. Brooke also admitted that in 2012 she became romantically involved with a married man, Chad. Brooke claimed that her relationship with Chad did not become intimate until after she and Mike separated. However, a letter that Brooke wrote to Chad indicated that the affair began in September 2012. Brooke's letter also indicated that,

---

[1] Brooke testified that she was in treatment for opioid addiction in 2002. She testified that she was prescribed Suboxone when she left treatment, and still took the drug three times a day. Brooke testified that she also took Vyvanse and Gabitril by prescription. Brooke alleged that Mike used cocaine and marijuana, although she did not believe that he had a drug problem. Mike denied that he used drugs.

3

although they both were still married, Chad had asked Brooke to marry him. At the time of trial, Brooke was still having an affair with Chad, who was also still married. Chad was called as a witness at trial and admitted to the affair.

¶9. Mike worked as a realtor and owned rental properties throughout the marriage. At some point, Mike also began working for an interior designer, Matt, who is related to Brooke and a godfather to one of the Hoffmans' children. Mike does not have any expertise in interior design but provided manual labor for Matt's business on an as-needed basis.

¶10. Brooke testified that Matt is gay. Brooke complained that Mike and Matt spent a lot of time together and went on business trips for "days at a time." She claimed that Mike would not answer his phone while he was out of town, and she did not believe that all of the trips were work-related. Brooke testified, "[I]t . . . was an ongoing problem in our marriage, and it caused [Mike] to be . . . emotionally and physically absent from the marriage, and it is not possible to have a marriage with three people involved in it." As the chancellor recognized, Brooke clearly implied that Mike was having an affair with Matt. However, Brooke was unwilling to make that accusation expressly, nor did she allege adultery as a ground for divorce.

¶11. Mike denied that there was any improper relationship between him and Matt. Mike testified that Matt was Brooke's relative, a friend, and a godfather to one of his children, but otherwise their relationship was "strictly business." Mike testified that he began working for Matt only because the real estate market went down, and he "was just doing everything [he

4

could] to make ends meet to pay for Brooke and [his] young family." Mike stopped working for Matt after he and Brooke separated.

¶12.    Matt's business partner also testified at trial. She testified that she worked and traveled with Mike and Matt on many occasions and never saw anything that suggested an inappropriate relationship. She testified that they all traveled together to provide design services for large parties, weddings, or commercial buildings.

¶13.    Mike also testified about the night in October 2012 when Brooke left the marital home. Mike testified that he walked into their bedroom around 1:30 a.m. and heard Brooke talking on the phone in a "giddy and flirtatious" manner. According to Mike, when he asked Brooke who she was talking to, Brooke began screaming at him and threatened to call the police. Brooke did call the police, and when the police arrived, they apparently considered arresting Brooke. However, the police allowed Brooke to spend the night at her parents' house instead of arresting her. Mike was not arrested or charged. He later learned that Brooke had been on the phone with Chad.

¶14.    Mike denied that he ever stabbed Brooke with a pencil or hit or "hurt Brooke at all." He also denied that he was verbally abusive, that he vandalized Brooke's house,[2] or that he destroyed or disposed of any of Brooke's property. Mike testified that he wanted to work through the couple's issues and did not want a divorce.

¶15.    On September 23, 2014, the chancery court entered an opinion finding that Brooke

---

[2] Mike suggested that Chad's wife could have been responsible for the vandalism.

5

was not entitled to a divorce because she had not proven either habitual cruel and inhuman treatment or constructive desertion. On October 20, 2014, the court entered a judgment dismissing Brooke's complaint for a divorce. The judgment simply incorporated the court's prior opinion finding that Brooke failed to prove either of her alleged grounds for divorce. The next day, Brooke filed a motion for reconsideration of the judgment.

¶16. On September 23, 2014, the court also entered a separate opinion and judgment finding Brooke in contempt for repeatedly denying Mike visitation with his children.[3] In its ruling, the court found that Mike was entitled to attorney's fees in an amount to be determined at a later hearing. On September 30, 2014, Mike filed a notice of hearing on the issue of attorney's fees. On October 2, 2014, Brooke filed a motion for reconsideration of the judgment finding her in contempt. On October 22, 2014, the court denied Brooke's motion for reconsideration. On November 11, 2014, Mike filed a second notice of hearing and a motion requesting attorney's fees related to his motion for contempt and for the divorce proceeding as a whole.

¶17. On January 27, 2015, the chancery court entered a judgment awarding Mike attorney's fees. The court awarded Mike fees of $9,437.50 for prosecution of his motion for contempt. In addition, the court awarded Mike fees of $22,134.59 for his defense of Brooke's complaint for divorce. The court found that Mike was financially unable to pay

---

[3] Mike was entitled to visitation pursuant to a March 7, 2013 temporary order. The issue of contempt was tried in July and September 2013, but the court agreed to reserve its ruling until after the trial on Brooke's complaint for a divorce.

those fees, while Brooke was financially able to pay. Thus, the court entered a total judgment in favor of Mike for $31,572.09 plus five percent post-judgment interest.

¶18.    Brooke's motion for reconsideration of the judgment dismissing her complaint for a divorce remained pending. Nonetheless, on February 25, 2015, Brooke filed a notice of appeal from the judgment awarding Mike attorney's fees. On appeal, Mike argued that this Court lacked jurisdiction due to the lack of a final, appealable judgment. This Court agreed with Mike and dismissed the appeal for lack of jurisdiction. *See Hoffman v. Hoffman*, 200 So. 3d 465, 468 (¶14) (Miss. Ct. App. 2016).

¶19.    On March 6, 2017, the chancery court denied Brooke's motion for reconsideration of the court's judgment dismissing her complaint for divorce. The court also awarded Mike an additional $11,837.50 for attorney's fees incurred subsequent to the court's original award. Finally, the court awarded Mike $3,157.20 for interest on the original award. Thus, the court entered a new judgment in favor of Mike for $46,566.79 plus five percent post-judgment interest. On April 4, 2017, Brooke filed a notice of appeal.

## ANALYSIS

¶20.    "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Holloman v. Holloman*, 691 So. 2d 897, 898 (Miss.

1996).  "A chancellor's conclusions of law are reviewed de novo."  *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

¶21.    On appeal, Brooke argues that the chancery court erred by finding that she failed to prove her alleged grounds for divorce.  She also argues that the court erred by awarding Mike attorney's fees because Mike filed for bankruptcy in April 2014, and was discharged from bankruptcy in September 2014, but failed to disclose a debt to his divorce attorney in the bankruptcy proceeding.  She argues that the doctrine of judicial estoppel bars Mike from recovering attorney's fees.  She also claims that any debt to Mike's attorney was discharged in bankruptcy.  We address these issues in turn.  We also address Mike's request for appellate attorney's fees.

### I.    Grounds for Divorce

¶22.    As discussed above, Brooke alleged that she was entitled to a divorce on the grounds of habitual cruel and inhuman treatment and constructive desertion.  As a practical matter, there is little difference between these two grounds.  "In effect, conduct that would qualify as habitual, cruel, and inhuman treatment becomes constructive desertion when the innocent spouse leaves the home rather than remaining."  Deborah H. Bell, *Mississippi Family Law* § 4.02[5][d], at 80 (2d ed. 2011).

¶23.    "Habitual cruel and inhuman treatment is conduct that either: (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger and renders the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to render the

8

marriage revolting to the non-offending spouse, making it impossible to carry out the duties of the marriage, therefore destroying the basis for its continuance." *Farris v. Farris*, 202 So. 3d 223, 231 (¶29) (Miss. Ct. App. 2016) (quotation marks omitted) (quoting *Heimert v. Heimert*, 101 So. 3d 181, 184 (¶8) (Miss. Ct. App. 2012)). "To prove habitual cruelty, the plaintiff must show more than mere unkindness, rudeness, or incompatibility." *Smith v. Smith*, 90 So. 3d 1259, 1263 (¶13) (Miss. Ct. App. 2011). "Although in cases of violence a single incident may be sufficient for a divorce, generally the plaintiff must show a pattern of conduct." *Id.*

¶24. Similarly, "constructive desertion" occurs when the innocent spouse "is compelled to leave the home and seek safety, peace, and protection elsewhere" because the offending spouse has engaged in conduct that "would reasonably render the continuance of the marital relation, unendurable or dangerous to life, health or safety." *Griffin v. Griffin*, 207 Miss. 500, 505, 42 So. 2d 720, 722 (1949). "Chancellors should grant a divorce on the ground of constructive desertion only in extreme cases." *Hoskins v. Hoskins*, 21 So. 3d 705, 710 (¶20) (Miss. Ct. App. 2009). The burden of proof is on the party seeking the divorce to prove her ground by a preponderance of the evidence. *Id.* at 707 (¶6).

¶25. We affirm the chancery court's judgment that Brooke failed to prove grounds for divorce. The chancery court noted that Brooke alleged only one incident of physical violence, which Mike denied. The court then noted that Brooke's single allegation of violence was undermined by a police officer's observation that she exhibited no signs of

9

physical abuse immediately after the alleged injury. The court also noted that the day following the alleged abuse Brooke wrote in a diary "that the parties made love and that she could 'really tell that he (Mike) was emotionally present.'"

¶26. The chancery court also found that Brooke's allegations related to Mike's relationship with Matt were not credible. Mike denied Brooke's allegations and another witness corroborated his testimony. Furthermore, the court found that Brooke offered "no proof" of an actual affair or physical relationship.

¶27. "It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact." *Johnson v. Black*, 469 So. 2d 88, 90 (Miss. 1985). "The chancellor is the finder of fact, and the assessment of witness credibility lies within his sole province." *Darnell v. Darnell*, 234 So. 3d 421, 423-24 (¶8) (Miss. 2017) (quotation marks omitted). "This Court gives deference to a chancellor's findings in regard to witness testimony, because the chancellor is able to observe and personally evaluate the witnesses' testimony and the parties' behavior." *McNeese v. McNeese*, 119 So. 3d 264, 275 (¶32) (Miss. 2013) (quotation marks omitted). Applying our familiar standard of review, we cannot say that the chancery court clearly erred in finding that Brooke's allegations were not credible.

¶28. The same is true of the chancery court's finding that Brooke's allegations of emotional abuse were "unpersuasive." The court noted that Brooke only testified to "a discreet number of unpersuasive specific incidents." And, again, Mike denied Brooke's allegations that he

was emotionally abusive. It is for the chancellor "alone" to "judge[] the credibility of the witnesses" and weigh any "conflicting evidence." *Irle v. Foster*, 175 So. 3d 1232, 1237 (¶32) (Miss. 2015). This Court does not reweigh conflicting evidence on such issues of fact. *Mayton v. Oliver*, 247 So. 3d 312, 322 (¶33) (Miss. Ct. App. 2017).

¶29. Suffice it to say there was conflicting evidence with respect to each of Brooke's various allegations against Mike. Those conflicts represent issues of fact for the chancery court to decide. *Id.* The chancery court summarized its reasons for dismissing Brooke's complaint for divorce as follows:

> Brooke may very well have determined for herself that she is no longer willing to countenance the ways in which she and Mike seem no longer to get along, especially when considered from the perspective of another man's arms with whom she may now seem more compatible. However, . . . for a divorce to be granted on the ground of habitual cruel and inhuman treatment there must be proof of systematic and continuous behavior on the part of the offending spouse which goes beyond mere incompatibility . . . .
>
> . . . .
>
> The theory of constructive desertion as a grounds for divorce is reserved for extreme cases. Although Brooke's and Mike's marriage might reasonably be characterized on the record made as unhappy and unfulfilling, the evidence does not support a finding that it is to be considered unendurable to Brooke.
>
> . . . .
>
> The [c]ourt takes no pleasure in declining to award relief in a circumstance where the parties are separated and one party professes to be so unhappy as to seek to be officially unshackled from the bonds of matrimony. The [L]egislature, as the policy makers for this [S]tate, have consistently declined to amend the divorce statutes to provide that one party can obtain a divorce from the other spouse without a showing of fault. Our appellate courts have not expanded the definition of cruel and inhuman treatment to include

11

circumstances which would otherwise comprise mere incompatibility. The [c]ourt is, therefore, constrained by the evidence presented to it and the record made, and cannot find that Brooke's and Mike's marriage was unendurable at the time that Brooke left. Thus, the [c]ourt cannot find that Mike is guilty of constructive desertion.

We find no clear error, legal error, or abuse of discretion in the chancery court's findings and conclusions. Therefore, we affirm the judgment of the chancery court dismissing Brooke's complaint for a divorce.

## II. Attorney's Fees

¶30. On the issue of attorney's fees, we begin by noting several points that Brooke does *not* dispute in this appeal. Brooke does not dispute (1) that she was in contempt, (2) that Mike is unable to pay the attorney's fees that he incurred defending against her complaint for divorce, (3) that, by contrast, she is financially able to pay those fees, and (4) that the hours expended and hourly rates and total fees charged by Mike's attorneys were all reasonable. As Brooke has not raised those issues on appeal, we do not address them. *See Layton v. Layton*, 181 So. 3d 275, 283 (¶¶21-23) (Miss. Ct. App. 2015).

¶31. Brooke's arguments on appeal focus entirely on Mike's bankruptcy. Specifically, as noted above, she argues that Mike's claims for attorney's fees are barred (1) by the doctrine of judicial estoppel because he failed to disclose a debt to his attorney in his bankruptcy proceeding and/or (2) because any debt to Mike's attorney was discharged in the bankruptcy proceeding. We conclude that the former issue is procedurally barred because Brooke did not raise the issue in the chancery court. Moreover, we conclude that Brooke failed to make

12

a record sufficient to support her arguments.

¶32. As Mike points out, Brooke did not raise the issue of judicial estoppel in the chancery court. Instead, she raised that issue for the first time on appeal. "It is well-settled that issues presented for the first time on appeal are procedurally barred from consideration." *Lewis v. Forest Family Practice Clinic P.A.*, 124 So. 3d 654, 658 (¶16) (Miss. 2013). "One of the most fundamental and long established rules of law in Mississippi is that [an appellate court] will not review matters on appeal that were not raised at the trial court level." *Estate of Myers v. Myers*, 498 So. 2d 376, 378 (Miss. 1986). This rule has special force here because "we review [a trial] court's application of judicial estoppel using the abuse of discretion standard." *Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 580 (¶13) (Miss. 2017) (explaining that the issue on appeal is *not* whether the trial judge's ruling "was 'right' or 'wrong' in our view," but whether "it was 'arbitrary and clearly erroneous'"). Because Brooke did not raise this issue in the trial court, there is no discretionary ruling for this Court to review. *See Alexander v. Daniel*, 904 So. 2d 172, 183 (¶25) (Miss. 2005) (explaining that appellate consideration of issues "raised for the first time on appeal" not only "depriv[es] the trial court of the first opportunity to rule" but also prevents the appellate court from applying "the appropriate standard of review"). Accordingly, we apply our settled rule that issues not raised in the trial court may not be raised for the first time on appeal.

¶33. In addition, the record is inadequate to support either of Brooke's claims related to Mike's bankruptcy proceeding. During the hearing on attorney's fees in the chancery court,

13

Mike testified that he filed for bankruptcy in April 2014 and was discharged in September 2014. Mike also testified that his obligation to pay his divorce attorney "was not discharged" in bankruptcy, although he did not "know of any" debt that was "affirmed" in the bankruptcy proceeding. Finally, Mike testified that he did not believe that he had "listed" a debt to his divorce attorney in any filings in the bankruptcy proceeding. Mike's divorce attorney testified that he was aware of Mike's bankruptcy and that his "fees were exempted from" the bankruptcy and were not "discharged"; however, Mike's attorney also stated that he was "not a bankruptcy person" and could not explain why his fees were not discharged. That is all that the record shows regarding Mike's bankruptcy. Brooke failed to introduce any pleadings, schedules, or orders filed in the bankruptcy court.

¶34. Citing *Chmelicek v. Chmelicek*, 51 So. 3d 1000, 1003 (¶8) (Miss. Ct. App. 2010), Brooke now argues that this Court should take judicial notice of records from Mike's bankruptcy. However, *Chmelicek* is clearly inapposite. There, the appellee filed a motion to supplement the record with—and asked the Supreme Court to take judicial notice of—specific schedules and decrees from the appellant's bankruptcy, which was filed *after* final judgment was entered in the chancery court. *Id.* The Supreme Court granted that motion. *Id.* Here, in contrast, Mike was discharged from bankruptcy years ago—months before the first hearing on attorney's fees in the chancery court and prior to Brooke's (premature) *first* appeal. Brooke was aware of the bankruptcy prior to the first hearing in the chancery court on this issue, but she failed to introduce any documents at the hearing. She

14

also failed to submit any relevant documents during subsequent proceedings in the chancery court following the dismissal of her first appeal. Finally, even in this second appeal, Brooke has not filed a motion to supplement the record with any pleadings, schedules, or orders from the bankruptcy court. She simply argues that we should log onto PACER, find Mike's case,[4] and then find the relevant documents ourselves.

¶35. We decline to search for "information outside of the record that neither party presented." *Pruitt v. Pruitt*, 144 So. 3d 1249, 1253 (¶11) (Miss. Ct. App. 2014) (holding that the chancellor abused his discretion by doing just that). The parties—not the chancery court, and certainly not an appellate court—must produce evidence sufficient to support their contentions. Brooke had ample opportunity in the chancery court to make a record to support her argument. "[S]he failed to do so, and so [s]he lost." *McGriggs v. McGriggs*, 192 So. 3d 350, 356 (¶27) (Miss. Ct. App. 2015).

¶36. Accordingly, we do not address Brooke's legal arguments that Mike's debt to his attorney was discharged in part[5] in bankruptcy, that the chancery court should not have awarded Mike attorney's fees that (allegedly) were discharged, or that the doctrine of judicial estoppel bars Mike's request for fees. We do not address these issues because the record is inadequate to determine whether the debt was discharged or what exactly was represented in the bankruptcy proceeding. Therefore, the chancery court's award of attorney's fees to

---

[4] The record does not contain the case style or number of Mike's bankruptcy.

[5] Brooke appears to concede that Mike's discharge from bankruptcy would have no impact on fees that he incurred after the bankruptcy.

15

Mike is affirmed.

### III. Appellate Attorney's Fees

¶37. On appeal, Mike requests an additional award of attorney's fees "of up to one-half of the prior amount awarded" by the chancery court. "Generally, on appeal this Court awards attorney's fees of one-half of what was awarded in the trial court." *Riley v. Riley*, 196 So. 3d 1159, 1164 (¶23) (Miss. Ct. App. 2016). However, "allowing attorney fees on appeal in an amount equal to one-half of the fees allowed by the trial court may not be fair and equitable in all cases." *Hatfield v. Deer Haven Homeowners Ass'n Inc.*, 234 So. 3d 1269, 1277 (¶30) (Miss. 2017). In some cases, "the better practice . . . would be for the party seeking attorney fees on appeal to file a motion in this Court, supported by affidavits and time records that establish the actual fees expended on appeal." *Id.*

¶38. The chancery court awarded only $6,000 or so in attorney's fees for the first appeal in this case. That amount was based on time actually spent on the appeal by Mike's attorneys. We have no way of knowing whether the second appeal required more attorney time than the first. However, given the actual cost of the first appeal, it "may not be fair and equitable" to award additional fees equal to half of the $43,409.59 already awarded by the chancery court. *Id.* Therefore, at this time, we deny Mike's request for appellate attorney's fees without prejudice. If Mike wants to pursue attorney's fees for the appeal, he should "file a motion in this Court, supported by affidavits and time records that establish the actual fees expended on appeal." *Id.* Any such motion should be filed before the mandate issues.

**CONCLUSION**

¶39. The final judgment of the chancery court is affirmed in all respects. We deny Mike's request for appellate attorney's fees without prejudice.

¶40. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**